

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROSALYN FOUNTAINE,
        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
        Defendant.

**DECISION & ORDER**
18-CV-6033-JWF

## Preliminary Statement

Plaintiff Rosalyn Fountaine ("plaintiff" or "Fountaine") brought this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). See Compl. (Docket # 1). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Docket ## 10, 15. Plaintiff's motion to allow reply briefing (Docket # 16) is **granted**. For the reasons that follow, plaintiff's motion (Docket # 10) is **granted** and the Commissioner's motion (Docket # 15) is **denied**. This matter is remanded to the Commissioner for the calculation of benefits.

## Background and Procedural History

Plaintiff filed her applications for DIB on July 29, 2014 and for SSI on August 20, 2014, alleging disability beginning on March 1, 2014. Administrative Record ("AR"), Docket # 9, at 209-21.

1

Plaintiff's applications were initially denied on November 24, 2014. AR at 114-49, 206-08. Plaintiff appeared at the hearing before Administrative Law Judge Michael Carr ("the ALJ") with counsel on March 8, 2016. AR at 41. Plaintiff, her daughter, and a vocational expert testified at the hearing. AR at 41-98.

The ALJ issued an unfavorable decision on August 19, 2016. AR at 12-30. Plaintiff timely filed a request for review by the Appeals Council ("AC"). See AR at 10-11. On November 16, 2017, the AC denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR at 1. Plaintiff then commenced this appeal (Docket # 1) and filed her motion for judgment on the pleadings on July 19, 2018 (Docket # 10). The Commissioner responded on September 24, 2018 (Docket # 15) and Fountaine moved for the Court to accept a reply brief on October 4, 2018 (Docket # 16).

## Discussion

This case presents a troubling administrative determination involving an applicant who undeniably suffers from disabling mental illness. The deferential standard of review that this Court is required to apply in this proceeding does not require it to turn a blind eye to what is readily apparent from a fair reading of this record: Rosalyn Fountaine is disabled from competitive full-time employment.

2

At step two of the familiar five-step sequential disability determination process, the ALJ acknowledged that Fountaine had the following severe impairments: generalized anxiety disorder, major depressive disorder, and post-traumatic stress disorder ("PTSD").[1] AR at 17. While accurate, the term "severe" seems inapt, if not wholly inadequate. Plaintiff has a long and debilitating history of serious and paralyzing mental health issues, including psychotic episodes, major depression disorder, despondency, severe anxiety, insomnia, anorexia, multiple suicide attempts and hospitalizations for suicidal ideation, and attempts at self-harm.

Indeed, virtually every medical report, note, or opinion in this record pays tribute to the severity of plaintiff's psychiatric issues. A sampling would include the following: In 2007, plaintiff was hospitalized for extreme depression and anxiety and admitted to self-medicating with alcohol. AR at 290. Her mood continued to be turbulent and depressed throughout 2010 and her thinking was disorganized and erratic. AR at 398-99. In 2011, she tried to kill herself by overdosing on medication. AR at 287. Two years later, plaintiff again tried to kill herself by repeatedly stabbing herself in her arm. AR at 33. In 2014, plaintiff attempted to shoot herself, but her suicide plan was foiled by her daughter. AR at 33. Fountaine's suicidal ideations

---

[1] The traumatic events plaintiff endured are documented repeatedly in the administrative record. See, e.g., AR at 401, 471-72.

and serious mental health issues continued despite repeated efforts to control them. In summer 2014, plaintiff was hospitalized due to severe depression and intrusive thoughts of suicide. AR at 328. Medical providers consistently noted that plaintiff had trouble organizing coherent, rational thoughts. AR at 463, 1233. In late July 2014, plaintiff was again hospitalized for hearing voices and self-harm. AR at 111. Her Global Assessment of Functioning ("GAF") was assessed at 40 (AR at 111, 300-01) and was 55 at discharge. AR at 326. Plaintiff's thought process continued to be disorganized, confused, and bizarre. She reported to medical appointments tearful and expressing feelings of anxiety and being overwhelmed. AR at 475, 478. On September 1, 2014, the police brought plaintiff to the hospital because plaintiff allegedly attempted, again, to overdose on medication. AR at 519, 714-15. Fountaine was admitted to the psychiatric ward where she was diagnosed with recurrent major depression and a GAF of 35. AR at 1026, 1156. The medical records list plaintiff's triggers as loud people, financial issues, aggression, and work-related stress. AR at 1130. When Fountaine was discharged less than a week later, her GAF was 65. AR at 983. Several months later, in December 2014, plaintiff again tried to overdose. AR at 524. Plaintiff reported anxiety and depression and was observed to have poor insight, judgment, attention span, and memory, as well as alcohol and opiate dependence. AR at 556, 629. Her GAF

4

was 25. AR at 556. In June 2015, plaintiff continued to have anxiety, depression, racing thoughts, and insomnia. AR at 494. She repeatedly indicated her desire to end her life and tried group counseling but the counseling provoked panic attacks. AR at 505-09. Over a year later, in August 2016, plaintiff was yet again admitted after attempting to overdose on 15 tablets of Klonopin, six tablets of Xanax, and ten beers. AR at 32. Her risk was assessed to be moderate to high because she continued to have suicidal thoughts with a plan. AR at 33-34. Records from plaintiff's treating physician indicate that plaintiff appeared unkempt and hopeless and had a flat affect, depressed mood, and impaired memory, even despite weekly therapies. AR at 101-05.

At the time of the hearing before the ALJ, plaintiff did not have her own place to live, and alternated between staying at her daughter's apartment and with a "friend." AR at 62, 83. Being homeless also compounded plaintiff's stress. AR at 64-65, 75-76. Fountaine told the ALJ that she did not like to "burden" her daughter, but her daughter, who was studying to be a nurse, testified that she was concerned about Fountaine's mental health and perilous living situation. AR at 61, 79-88. Plaintiff's daughter further testified that her mother's PTSD, depression, and anxiety had been "very, very severe" in the months prior to her hearing. AR at 80. Her conditions resulted in "a lot of breakdowns" and multiple hospitalizations at St. Joe's Hospital

5

Behavioral Science Unit. AR at 80, 517-1231. When plaintiff had breakdowns, she would get "very nervous, shaky, tearful, crying, emotional." AR at 86. The breakdowns would also sometimes "get out of hand" when plaintiff "tried to hurt herself." Id. This happened "four or five times" and resulted in multiple hospitalizations. Id. The ALJ even acknowledged that plaintiff had been hospitalized due to suicidal ideation. AR at 22.

Plaintiff's daughter told the ALJ that she observed her mother's sudden mood swings and her difficulties with comprehension and memory. AR at 81, 84. She testified that plaintiff struggles with "following directions and how to get places or appointments" and struggles to complete paperwork and recall events. AR at 80-84. Despite being sober for six months prior to the hearing, plaintiff admitted to struggling to maintain her sobriety. AR at 76, 83. When plaintiff experiences a depressive episode, she cannot shop, cook, do house chores, or do anything for herself. AR at 87. These "depressive fits" can last for up to a week. AR at 87.

In addition to the testimony of plaintiff and her daughter, which undeniably corroborated plaintiff's medical history, the ALJ also had the benefit of opinion evidence from plaintiff's treating mental health therapist. In an opinion letter dated February 2, 2016, plaintiff's treating therapist, Dr. Catherine Zaffarano informed the ALJ that she had been treating plaintiff weekly since

November 2015 utilizing "several different modalities for coping with severe PTSD and Major Depressive Disorder." AR at 516. In Dr. Zaffarano's opinion, plaintiff was not "capable of being employed". Id. Dr. Zaffarono followed up with a more detailed report dated March 21, 2016. In that report, she advised the ALJ that plaintiff suffered from major depressive disorder with psychotic features, PTSD, daily depression, hopelessness, insomnia, inability to concentrate, suicidal ideation, and panic. Plaintiff had been prescribed clonazepam, fluoxetine, and zolpidem and Dr. Zaffarano informed the ALJ that these medications had the following side effects: fatigue, memory problems, depression, dizziness, restless agitation, insomnia, and diarrhea. Based on her ongoing treatment of plaintiff, Dr. Zaffarano opined that plaintiff had major or extreme limitations in the following work-related functions: maintaining concentration, maintaining regular attendance "without interruptions from psychological based symptoms", and that plaintiff would be "off task" more than 33% of the day and would be absent from work three or more days per month. See AR at 1265-66.

Based on this administrative record, the ALJ determined that plaintiff has the ability "to perform a full range of work at all exertional levels" so long as she is "limited to performing simple routine and repetitive tasks" and is limited to "simple work-related decisions." AR 19-20. Based on a hypothetical posed to

7

a Vocational Expert ("VE"), the ALJ determined that plaintiff could find employment as a "warehouse worker", an "industrial cleaner", or a "kitchen helper." AR at 26.

The ALJ's decision is not supported by substantial evidence for several reasons. First, the ALJ decided to give "limited weight" to the only opinion in the record from a treating source, plaintiff's mental health therapist. The Commissioner advises disability applicants of the importance of submitting medical opinions from treating sources. See 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources."). Plaintiff submitted a myriad of medical and hospitalization records regarding her longstanding and severe mental health issues, including opinion evidence from her treating therapist. It is well-settled that where an ALJ gives a treating source opinion something less than "controlling weight," he must provide good reasons for doing so.[2] Our circuit has consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand. See Schaal v. Apfel, 134 F.3d 496, 503-05 (2d Cir. 1998); see also Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating

---

[2] This so called "treating physician rule" was in effect at the time plaintiff's claim was filed.

physician['s] opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant.").

Our circuit has also been blunt on what an ALJ must do when deciding not to give controlling weight to a treating physician:

> To override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion. The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.

Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (emphasis added) (internal citations, quotations, and alterations omitted).

Here, the ALJ assigned what he described as "limited weight" to the medical opinions of the claimant's treating mental health providers. AR at 23. His justifications meet neither the letter nor the spirit of the treating physician rule. The ALJ accorded Dr. Zaffarano's opinion limited weight because of a lack of

9

treatment notes and "objective clinical findings" to substantiate the opinion and because "[i]t would appear that if the claimant were able to do all of these [therapies] while attending outpatient services at Cloud Nine,[3] she would be able to maintain work. Moreover, the ALJ reasoned, "the claimant even acknowledged that she is happy and her conditions have improved." AR at 23.

The ALJ's primary reasoning is that because plaintiff attended treatment, she must be able to work. First, it is not true that plaintiff regularly attends treatment. In fact, Fountaine's inability to engage in consistent treatment underscores her mental illness. Dr. Zaffarano's treatment notes document plaintiff's inability to maintain a schedule and demonstrate that she erratically appeared early at Cloud Nine Wellness, failed to attend classes at all, or intermittently did so. AR at 104-07. They also document plaintiff's inability to accept or follow instructions, and underscore that plaintiff needed constant reminders to make appointments with various medical professionals, take her medications, and was told month after month to follow a specific care plan that she seemingly could

---

[3] Plaintiff had received psychotherapy treatment at Cloud Nine Wellness with Dr. Catherine Zaffarano "multiple times a week". AR at 67-68. Dr. Zaffarano apparently incorporated various holistic therapies into plaintiff's treatment regimen, including support groups, yoga classes, and tai chi. AR at 23, 67-68. Dr. Zaffarano is a psychologist whose opinion is entitled to controlling weight under the treating source rule. See Steficek v. Barnhart, 462 F. Supp. 2d 415, 419 (W.D.N.Y. 2006) (The treating source rule "applies to opinions of treating psychiatrists and treating psychologists.") To the extent the ALJ is limiting the weight of Dr. Zaffarano's opinions based on her therapy techniques, there is no basis in the record or the law to do so.

10

never comply with. AR at 101, 104-05, 107-08. Second, even if plaintiff attended treatment with some frequency, such attendance would not mean that she can mentally cope with a full-time job.

Even without Dr. Zaffarano's treatment notes, her opinions as expressed in her mental RFC report (AR at 1265-66) were well-supported by the extensive medical record and hearing testimony discussed above. These records unquestionably support and are fully consistent with Dr. Zaffarano's opinion that plaintiff's mental illness would prevent her from engaging in full-time employment in a competitive work environment. Moreover, the ALJ's reliance on a single comment from plaintiff that she felt "happy" or that she experienced some "improvement" as justification for a disability decision on this record reflects an alarming misunderstanding of mental illness.

> As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014); see Testamark v. Berryhill, 736 F. App'x 395, 398-99 (4th Cir. 2018) ("Because symptoms of mental illness may wax and wane over the course of treatment, the fact that Testamark exhibited fair judgment or appeared cooperative on certain specific occasions is

not inconsistent with the conclusion that she is unable to work."); Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010) ("More importantly, symptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression."); Frasier v. Berryhill, No. 17-CV-00177, 2018 WL 5801059, at *3 (W.D.N.Y. Nov. 6, 2018) ("Many mental illnesses are characterized by good days and bad days, rapid fluctuations in mood, or recurrent cycles of waxing and waning symptoms")(internal quotation and citation omitted).

While assigning little weight to the treating source, the ALJ assigned "great weight" to the opinion of psychologist Sara Long. Long met with plaintiff on a single occasion in October 2014. In the context of this record, the ALJ giving "great weight" to the opinion of a non-treating source[4] such as Dr. Long was error. This is because "consultative exams are often brief, are generally performed without the benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990) (internal quotation omitted); see also Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) ("We also acknowledge that generally, 'in evaluating a claimant's disability, a consulting physician's

---

[4] Under the regulations in place at the time this claim was filed, a "nontreating source" is defined as a "physician, psychologist, or other acceptable medical source who has examined [the plaintiff] but does not have, or did not have, an ongoing treatment relationship with [the plaintiff]." 20 C.F.R. § 416.902.

12

opinions or report should be given little weight.'") (quoting Cruz, 912 F.2d at 13). The usefulness of a one-time psychiatric consultative examination, particularly in a case where disabling mental illness is alleged, is readily apparent here. Despite a psychiatric record that pays tribute to multiple hospitalizations and suicide attempts, in-patient and out-patient psychiatric treatment, confirmed and repeated diagnoses of major depressive disorder, and PTSD, Dr. Long did not even diagnose plaintiff with depression and recommended that PTSD be ruled out. AR at 490. Given the totality of the record, it is troubling that the ALJ would choose to give this particular opinion "great weight" in his disability determination.

## Conclusion

Based on the evidence in the record, Rosalyn Fountaine is disabled. Remand for further record development and more administrative proceedings, or another hearing, would serve no useful purpose. See White ex rel. Johnson v. Barnhart, 409 F. Supp. 2d 205, 209 (W.D.N.Y. 2006) (remanding for calculation of benefits where record was fully developed and compelled conclusion that claimant had marked limitations in attending and completing tasks, further administrative proceedings would serve no useful purpose, and to remand for further proceedings would result in unnecessary delay); Colegrove v. Commissioner of Soc. Sec., 399 F. Supp. 2d 185, 198 (W.D.N.Y. 2005) (where existing record contains

13

persuasive proof of disability and remand for further evidentiary proceedings would serve no further purpose, remand for calculation of benefits is appropriate); Corretjer v. Barnhart, No. 02 Civ. 1700(HB), 2003 WL 1936146, at *3-4 (S.D.N.Y. Apr. 22, 2003) (remanding case for calculation of benefits where the ALJ failed to accord controlling weight to treating physician's opinion that plaintiff's psychiatric diagnoses, including PTSD, borderline personality disorder, and major recurrent depression, exist independently of her substance abuse).

Accordingly, plaintiff's motion for judgment on the pleadings (Docket # 10) is **granted**, and the Commissioner's motion for judgment on the pleadings (Docket # 15) is **denied**. The case is remanded for the immediate calculation of benefits.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 29, 2019
Rochester, New York